```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                      FORT WORTH DIVISION

PONDER RESEARCH GROUP,        §
LLP, ET AL.                   §
                              §
VS.                           §    CIVIL ACTION NO.4:09-CV-322-Y
                              §
AQUATIC NAVIGATION,           §
INC., ET AL.                  §
```

## ORDER DENYING MOTION FOR LEAVE TO AMEND

Before the Court is Plaintiffs' Motion for Leave to File Second Amended Complaint (doc. #47). In the motion, Plaintiffs seek leave to file a second amended complaint in order to revive claims of fraud the Court previously ordered dismissed. After review, the Court concludes that the proposed amendment would be futile and that the amendment should not be allowed in light of Plaintiffs' past failure to cure the deficiencies in their pleadings. As a result, the motion for leave to amend will be denied.

I. Background

   A. Factual Background

The factual background of this case is set out in greater detail in the order granting in part and denying in part defendant Brian Coffin's motion to dismiss (doc. #19). Briefly, plaintiff Ponder Research Group, LLP ("Ponder Research"), is a Texas limited partnership specializing in technology consulting. Andrew Cohen and Peter Zipkin are partners in Ponder Research. In November 2005, Cohen and Zipkin met with Coffin to discuss the possibility of Ponder Research's opening a marine-electronics division in Florida

that would sell, install, service, and repair marine-electronics and satellite-communications equipment on ships and large yachts. At the time, Coffin owned a 50% interest in Stateside Commercial Marine, Inc., a Florida S-Corporation, which was in the marine-electronics business. A possible arrangement between Coffin and Ponder Research was discussed on several occasions. Ultimately, the parties allegedly agreed that Coffin would become a limited partner in Ponder Research and would become Ponder Research's agent and operate its marine division in Florida. Coffin, however, never purchased a partnership interest as agreed.

Eventually, Ponder Research proposed that Coffin purchase its marine-electronics division. Coffin agreed to do so, and Ponder Research formed Ponder Marine, Inc. ("Ponder Marine"), to which all of the marine division's assets would be transferred to facilitate the sale. Coffin was to purchase all of the stock in Ponder Marine. But Coffin, after being given access to Ponder Research's confidential information in connection with the agreement and after using his position with Ponder Research to access more of the company's business information, refused to go through with the agreement. Instead, Coffin told Ponder Research that he was interested only in purchasing its marine division's assets, rather than Ponder Marine, and threatened to use the confidential information he had gathered to open a competing marine-electronics company if Ponder Research refused to sell them.

2

To carry out the asset-purchase agreement, Coffin formed Aquatic Navigation, Inc. ("Aquatic"), to which Ponder Marine would sell all of Ponder Research's marine-division assets. Aquatic also agreed to assume all of Ponder Marine's liabilities and to indemnify and hold harmless Ponder Research for losses resulting from the asset-purchase agreement.

Prior to the execution of the asset-purchase agreement, Coffin represented to Ponder Research that he had not performed any work or sold any materials that were not accurately recorded in Ponder Marine's accounting system. The obligation to ensure that Ponder Marine's accounting records were accurate, and the representation that the records were, in fact, accurate, was also included in the asset-purchase agreement. Ponder Research insists that, despite these representations, Ponder Marine's accounting records were not accurate in that they did not reflect an approximately $44,000 invoice from one of its suppliers. Because of this omission, Ponder Research alleges, Aquatic did not assume liability for the invoice as agreed and the supplier is now demanding payment from Ponder Research.

B. Procedural Background

This case was originally filed in the 67th Judicial District Court, Tarrant County, Texas. Defendants removed the case to this Court on June 8, 2009, and the following week Coffin filed his first

motion to dismiss (doc. #7). Thereafter, Plaintiffs filed an amended complaint and the Court denied Coffin's first motion to dismiss as moot (doc. #13). Coffin filed a second motion to dismiss targeting the amended complaint.

On September 4, 2009, the Court entered an order (doc. #19) granting in part and denying in part Coffin's motion to dismiss. In that order, the Court analyzed the fraud claims made by Ponder Research against Coffin, dismissing many of them because they were not pleaded with the specificity required by Federal Rule of Civil Procedure 9(b). Plaintiffs now seek leave to file a second amended complaint to address the deficiencies identified.

In both their original and first amended complaint, Plaintiffs alleged that Coffin and Ponder Research "discussed the possibility of Defendant Coffin's purchasing a limited partnership interest in Plaintiff Ponder Research." (Doc. #1, part 5 at 11-12; Doc. #8 at 13.) Plaintiffs based a fraud claim on these factual allegations, asserting that Coffin had misrepresented his intention to purchase a partnership interest. The Court dismissed this claim, explaining that a claim of fraud must be based on a misrepresentation of fact, not a mere discussion of possible future events. *Cf. Formosa Plastics Corp. U.S. v. Presidio Eng'rs & Constrs.*, 960 S.W.2d 41, 46 (Tex. 1998) (concluding that a promise, as opposed to mere discussion, made with no intent to perform is basis for fraudulent-inducement claim); *Foster v. Reed*, 623 S.W.2d 494, 495-496 (Tex.

4

App.--Beaumont 1981, no writ) (concluding that promise made regarding future performance is not actionable unless, at the time made, the promise misrepresented existing facts).  Plaintiffs attempt to revive this claim in their proposed second amended complaint by alleging that Coffin fraudulently represented that he would, for $75,000, purchase a 10% interest in Ponder Research as part of his initial arrangement with the company.

Plaintiffs also seek to amend their fraud claim regarding Coffin's alleged submission of false expense reports.  In their original and first amended complaint, Plaintiffs alleged that, beginning in June 2007, Coffin began submitting multiple claims for expenses, submitting inflated claims, and submitting claims without supporting receipts or receipts that were falsified.  The Court dismissed this claim, noting that Plaintiffs had not identified any specific reimbursement claim that was false. Moreover, Plaintiffs' allegation that the false reimbursements began in June 2007 fell short of Rule 9(b)'s requirement that allegations in support of a fraud claim include an allegation of when the statement at issue was made.  Coffin submitted several reimbursements and it was unclear from the amended complaint whether Plaintiffs' position is that all reimbursement claims submitted by Coffin after June 2007 were fraudulent or only some.  Plaintiffs' proposed amended complaint adds factual allegations in support of this claim and includes as an exhibit the allegedly fraudulent expense reports.

5

Finally, Plaintiffs are attempting to amend their fraud claim based on Coffin's alleged failure to enter invoices from suppliers into Ponder Marine's accounting records. The Court dismissed this claim because Plaintiffs did not allege when the misrepresentation occurred. According to Plaintiffs, their proposed amended complaint includes allegations as to whom Coffin made this misrepresentation and when it was made.

II. Discussion

    A. Standard for Allowing Amendment

Under Federal Rule of Civil Procedure 15(a), a "court should freely give leave [to file amended pleadings] when justice so requires." FED. R. CIV. P. 15(a). Unless the party opposing the motion for leave comes forward with a reason, the motion should be granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, the decision of whether to grant leave remains within the discretion of the trial court. *See id.* In making its decision, a district court may consider various factors, including the futility of the requested amendment, the moving party's failure to cure deficiencies with previous amendments, undue delay in seeking leave to amend, or bad faith in seeking leave. *See id.; see also United States ex rel. Marcy v. Rowan Co.*, 520 F.3d 384, 392 (5th Cir. 2008).

B.  Futility of Amendment

Coffin argues that the Court should not allow Plaintiffs to file their second amended complaint because their proposed amendments are futile.  As to the claim based on Coffin's alleged failure to enter supplier invoices into Ponder Marine's accounting records, the proposed second amended complaint alleges that Coffin misrepresented the accuracy of the accounting records on May 16, 2008, and at various other times between May 1, 2008, to May 16, 2008.  Thus, Plaintiffs have addressed the deficiency identified by the Court in the order of dismissal--the lack of an allegation of when the allegedly false statement was made.

Coffin insists that Plaintiffs' proposed second amended complaint fails to comply with Rule 9(b) in other ways.  Coffin argues that the proposed second amended complaint fails to allege that a false statement was made.  Indeed, the section of the proposed amended complaint that specifically addresses this claim merely alleges that Aquatic, as part of the asset-purchase agreement, and Coffin, in telephone conversations with Cohen, "warranted" that Ponder Marine's accounting records were accurate.  But the proposed second amended complaint alleges elsewhere that both Aquatic and Coffin failed to enter the approximately $44,000 supplier invoice, making false any warranty that Ponder Marine's accounting records were accurate.

Plaintiffs have not, however, made any allegation that Coffin

7

or Aquatic knew that the warranty was false or made the warranty without knowledge of its truth. *Cf. Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 480 (5th Cir. 2000) (reciting the elements of fraud as including a misrepresentation that to the defendant "was either known to be false when made or was asserted without knowledge of the truth"). This is despite the fact that, under Rule 9(b), knowledge and conditions of a person's mind may be alleged generally. Plaintiffs have not argued that the facts in the proposed second amended complaint support an inference that Aquatic or Coffin had the requisite state of mind regarding the warranty. Additionally, the proposed second amended complaint is Plaintiffs' third attempt at pleading this fraud claim, but they failed to show in their motion for leave that the proposed complaint adequately alleges this claim. Given these circumstances, the Court will not strain to find facts that support an inference that Aquatic or Coffin had the requisite state of mind. *Cf. Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (stating that Rule 9(b)'s heightened-pleading requirement is interpreted strictly); *Whitaker v. City of Houston*, 963 F.2d 831, 835 (5th Cir. 1992) (holding that after a complaint has been dismissed the plaintiff must seek leave to file an amended complaint).

Next, Coffin argues that Plaintiffs' proposed second amended complaint does not sufficiently allege a fraud claim based on Coffin's alleged submission of false expense reports. In their

8

brief in support of the motion for leave to amend, Plaintiffs point the Court to paragraph 16 of the proposed second amended complaint as providing sufficient allegations for this claim. Plaintiffs have also attached as exhibit 1 to the proposed second amended complaint 164 pages constituting the allegedly falsified reimbursement claims.

Coffin complains that, despite the additional allegations and incorporation of exhibit 1, Plaintiffs' allegations are still insufficient. Coffin points out that there is no allegation that he knew the reimbursement claims were false or that he made the claims without knowledge as to their truthfulness. The proposed second amended complaint does allege that Coffin "made up" some of the receipts in support of the reimbursement claims. But, as Coffin contends, Plaintiffs do not specify which of the 164 documents in exhibit 1 are made up.

Plaintiffs counter that they allege in paragraph 16 that Coffin submitted "fraudulent expense reimbursement claims." The question before the Court is whether the factual allegations in the proposed second amended complaint state a plausible claim for fraud. Plaintiffs' characterization of Coffin's reimbursement claims as "fraudulent" is a legal conclusion that does not assist the Court in answering this question or satisfy the pleading requirements of the federal rules. *Cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (observing that "labels and conclusions . . . will not do" and that "the tenet that a court must accept as true all of the allegations

9

contained in a complaint is inapplicable to legal conclusions").

Plaintiffs further counter that they have sufficiently alleged fraud by including the allegedly false reimbursement claims. According to Plaintiffs, the very nature of the irregularities displayed in the claims supports an inference of fraud. In their motion for leave, Plaintiffs point to one specific example: a claim for reimbursement for the personal expense of automobile repairs. But beyond this example, the Court and Coffin are without guidance as to the manner in which any given expense report between June 2007 and May 2008 is false, let alone that Coffin knew they were false or made the reports without knowledge of their truthfulness. In the proposed amended complaint, Plaintiffs allege that some of the expense claims were duplicative, some were exaggerated beyond what is customary for the type of expense at issue, and some of the documents submitted in support of the expense claims were made up. But there is no specification as to which expense claims demonstrate the veracity of these allegations. Thus, the Court is left to parse through 164 pages of expense claims without any meaningful guidance as to how they are false or what was Coffin's state of mind in connection with them.

These pages, Plaintiffs posit, contain notations that indicate the falsity of the expense claims and support an inference that Coffin had the requisite state of mind for a fraud claim. But the notations on the receipts submitted to Ponder Research by Coffin

10

state that certain claims are "not authorized," are for personal expenses and therefore not reimbursable, or that there is insufficient detail to support reimbursement. There is nothing to suggest that the expense claims were false, rather than merely erroneous, or that Coffin knew that the expenses were false or requested reimbursement without knowledge as to the truth of the expenses.

Finally with regard to this claim, Plaintiffs insist that this is a complex claim of fraud that took place over several weeks, and, therefore, it is enough to generally allege the circumstances constituting fraud. Facts supporting the elements of fraud must be alleged with specificity. Plaintiffs have not shown that their proposed second amended complaint sufficiently alleges the falsity of the expense reports or Coffin's state of mind.

The last claim at issue is Plaintiffs' claim of fraud based on Coffin's purchasing a partnership interest in Ponder Research. The Court dismissed this claim because Plaintiffs' supporting factual allegations stated that there was simply a discussion about Coffin's purchasing an interest in Ponder Research, rather than a promise made by Coffin to do so. In paragraph 13 of the proposed second amended complaint, Plaintiffs allege that Coffin agreed to purchase a 10% interest in Ponder Research for $75,000. Plaintiffs also allege the date of these misrepresentations, to whom they were made, and where.

This level of detail addresses the Court's observation in the

11

order of dismissal that Plaintiffs had failed to allege facts showing that Coffin made a promise, rather than merely engaging in discussions.  But the point of the Court's ruling on the motion to dismiss was broader.  To state a claim of fraud based on future performance, the plaintiff must not only allege that the defendant actually promised, as opposed to having merely discussed, future performance; the plaintiff must also allege that the promise was made with the intent not to perform.  *See Formosa Plastics Corp. U.S.*, 960 S.W.2d at 46 (concluding that a promise, as opposed to mere discussion, made with no intent to perform is basis for fraudulent-inducement claim); *Foster*, 623 S.W.2d at 495-496 (concluding that promise made regarding future performance is not actionable as fraud unless, at the time made, the promise misrepresented the promisor's intent).  There are no allegations as to Coffin's state of mind with regard to the promise to purchase a partnership interest.  Nor does Plaintiffs' motion for leave to amend convince the Court that the proposed second amended complaint contains facts from which it can be inferred that Coffin had no intent to purchase a partnership interest when he made the promise.

Further, Coffin points out that in his motion to dismiss he argued that this Court lacks personal jurisdiction over him.  As to this fraud claim, the Court denied his motion on this point, observing that Plaintiffs had alleged that Coffin discussed his potential purchase of a partnership interest during a trip to Texas.  Thus,

12

Coffin had made purposeful contact with the forum state of Texas sufficient to confer personal jurisdiction over him in connection with this claim. In the proposed second amended complaint, Plaintiffs have revised their factual allegations in support of their claim that Coffin committed fraud by promising to purchase a partnership interest in Ponder Research. Coffin is now alleged to have made such a promise on numerous occasions, including during visits by Cohen and Zipkin to Florida; at a convention in New Orleans, Louisiana; and during trips by Cohen and Coffin to California. Coffin is also alleged to have made the same promise during a telephone conversation with Cohen and Zipkin, but there is no allegation that any participant in the conversation was in Texas at the time of the promise. Plaintiffs make no attempt in their motion for leave to amend to clarify where the participants of the phone conversation were located at the time of the conversation.

Plaintiffs, citing *Calder v. Jones*, 465 U.S. 783 (1984), argue that regardless of where Coffin was during these conversations and regardless of whether Coffin purposefully directed any of his actions to the State of Texas, this Court has jurisdiction over him for this claim because the "brunt of the harm" of his misrepresentation was suffered in Texas. But the fact that the plaintiff suffered the brunt of the harm in a given forum is not a substitute for the need for a defendant to have minimum contacts with that forum before being subject to personal jurisdiction there. In all cases,

13

the Due Process Clause of the Fourteenth Amendment permits personal jurisdiction over a defendant only "in any State with which the defendant has certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) and citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). In *Calder* and in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), which was decided the same day as *Calder*, the United States Supreme Court discussed the plaintiff's residence and where the plaintiff suffered the brunt of the harm resulting from the defendant's actions in determining whether the defendant had sufficient contacts with the forum at issue to establish personal jurisdiction. *See Calder*, 465 U.S. at 788-89; *Keeton*, 465 U.S. at 779-81. Both cases dealt with the publication of an allegedly libelous article by a company based in a state other than the state in which the litigation was filed. In both cases, the Court concluded that jurisdiction over the defendant was proper, noting that each defendant had sold its publication in the forum and thereby caused harm to the plaintiff in the forum. *See Calder*, 465 U.S. at 784, 788-89; *Keeton*, 465 U.S. at 774, 779-

14

81. Thus, contrary to Plaintiffs' argument, their assertion in their briefing that they suffered the brunt of the harm at issue in Texas is no substitute for allegations that Coffin purposefully directed his actions that allegedly caused that harm at the State of Texas. Without such allegations, this Court is without personal jurisdiction over Coffin with regard to this claim. *See Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990) (noting that the party invoking federal jurisdiction bears the burden of establishing sufficient contacts by the defendant with the forum to support the court's exercise of jurisdiction); *cf. Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628-29 (5th Cir. 1999) (concluding that tortious conduct committed outside the forum vests jurisdiction in the forum over the tortfeasor when the consequences of the conduct in the forum are seriously harmful and were intended or likely to follow from the conduct); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("[W]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

C. Prior Opportunities to Cure

The foregoing shortcomings in the proposed second amended complaint are particularly unjustified in light of the fact that it is Plaintiffs' third attempt to plead their case. A plaintiff's repeated failure to cure deficiencies in previous amendments is itself a basis for denying a motion for leave to amend. *See United*

15

*States v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004). Plaintiffs originally filed this case in a Texas state court. Defendants then removed the case and Coffin filed a motion to dismiss. Plaintiffs filed an amended complaint and a response to the motion to dismiss arguing that their amended complaint mooted the motion to dismiss. Defendants then filed a motion to dismiss the amended complaint, to which Plaintiffs filed a response brief. Thus, Plaintiffs have had two opportunities to plead their case and two opportunities to establish the adequacy of their pleadings in response to motions to dismiss.

And the nature of the claims at issue undermines any argument that leave to file a second amended complaint is appropriate. For example, Plaintiffs seek to base a fraud claim on Coffin's alleged promise to purchase a partnership interest in Ponder Research. If that promise was made, it was made to one of Ponder Research's principals and, therefore, Ponder Research was well aware of the facts supporting any related fraud claim at the time both the state petition and the amended complaint were filed. Yet this claim was not pleaded in either place with sufficient specificity. Plaintiffs have had ample opportunity to plead their case and will not be given leave to file a second amended complaint. *Cf. id.* at 404 (concluding that district court did not abuse its discretion in denying leave to amend when the plaintiff had a prior opportunity to amend in light of the defendant's objections); *see also Price v. Pinnacle*

16

*Brands*, 138 F.3d 602, 608 (5th Cir. 1998) (affirming district court's denial of leave to amend to plaintiffs that had three opportunities to state their theory of recovery--in their complaint, in a case statement ordered by the court, and in response to the motion to dismiss).

III. Conclusion

With the foregoing, the Court concludes that the second amended complaint proposed by Plaintiffs would be futile because the fraud claims that Plaintiffs seek to add are still not pleaded with sufficient particularity and the amended pleading of one of the claims exposes a lack of personal jurisdiction. Additionally, the Court concludes that Plaintiffs have failed to take advantage of ample opportunities--an original complaint, amended complaint, and briefing of two motions to dismiss--to establish the sufficiency of their pleadings.

Accordingly, in light of the futility of the amendment proposed by Plaintiffs and their past failure to cure the deficiencies in their pleading, the Court DENIES the motion for leave to amend.

SIGNED May 4, 2010.

                                                TERRY R. MEANS
                                                UNITED STATES DISTRICT JUDGE